UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **TODD SAIN, Individually and for Others Similarly Situated**<br>        **Plaintiff,** | **CASE NO. _____** |
| **v.** | **FLSA COLLECTIVE ACTION** |
| **TRANSCANADA USA SERVICES INC., and ONSHORE QUALITY CONTROL SPECIALISTS, LLC**<br>        **Defendants.** | **JURY TRIAL DEMANDED** |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

1.      Plaintiff Todd Sain brings this lawsuit to recover unpaid overtime wages and other damages from Defendants TransCanada USA Services Inc. ("TransCanada") and Onshore Quality Control Specialists, LLC ("QCS") (collectively "Defendants") under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 *et seq.*

2.      Plaintiff worked for Defendants as an Inspector and his duties included inspecting interstate pipelines to ensure the safe transportation of oil and gas in interstate commerce.

3.      Although Plaintiff worked for Defendants in excess of forty (40) hours each week, Defendants did not pay Plaintiff overtime.  Instead of paying overtime as required by the FLSA, Defendants paid Plaintiff a day rate without overtime compensation.

4.      Plaintiff brings this action in his individual capacity and on behalf of all other similarly situated workers who were denied overtime pay under Defendants' day-rate system.

**JURISDICTION AND VENUE**

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.     Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant TransCanada maintains their corporate headquarters in Houston, Texas.

## THE PARTIES

7.     Plaintiff worked for Defendants from July 2019 until November 2020.

8.     Throughout his employment, Plaintiff was paid a flat daily rate for each day worked, regardless of the total hours worked in a workweek.

9.     Defendants did not pay Plaintiff a salary.

10.     Defendants did not pay Plaintiff hourly.

11.     Defendants' pay scheme is a per se violation of the FLSA and other relevant state wage laws. *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d. 183, 191 (6th Cir. 2017); *Hewitt v. Helix Energy Sols. Grp., Inc.*, No. 19-20023, 2021 WL 4099598 (5th Cir. Sept. 9, 2021).

12.     Plaintiff's consent to be a party plaintiff is attached to this Complaint as Exhibit 1.

13.     Plaintiff brings this action in his individual capacity and on behalf of all other similarly situated workers who were denied overtime pay under Defendants' day-rate system. Each of these workers were paid a flat amount for each day worked for TransCanada with no overtime for hours they worked in excess of 40 hours in a workweek in accordance with the FLSA. Specifically, the class of similarly situated workers consists of:

> **All workers employed by, or working on behalf of, TransCanada, staffed by OCS, that were paid a day-rate with no overtime at any time within the past three (3) years. (FLSA Class Members)**

14.     Defendant TransCanada is a Canadian corporation that maintains its United States headquarters in Houston, Texas. Defendant TransCanada may be served with process by serving its registered agent: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

15.     Defendant QCS is a Texas limited liability company, and subsidiary of Workrise, that can be served through its registered agent: Eddie H. Hooks Jr., 3809 South 1st Street, Austin, Texas 78704, USA.

16.     Due to their relationship to Plaintiff and the Class Members, Defendants were joint employers for the purposes of the FLSA. *See* 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.

## COVERAGE UNDER THE FLSA

17.     At all times hereinafter mentioned, Defendants were employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all times hereinafter mentioned, Defendants were and are an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all relevant times, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20.     At all relevant times, Defendants had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

21.     In each of the past 3 years, Defendants' annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

22.     TransCanada is one of North America's largest energy infrastructure providers and a self-proclaimed "vital part of everyday life, **delivering the energy** millions of people rely on to power their lives in a sustainable way."[1]

---

[1] *See* https://www.tcenergy.com/about/strategy/ (last visited 08/22/22)

23.     As part of its operations, TransCanada uses "pipelines that have operated for over a century – thanks to plenty of maintenance, modernization and expansion along the way" and also "build(s) and operate(s) new natural gas and oil pipelines in Canada, the U.S. and Mexico, to world class safety and environmental standards."[2]

24.     To complete its business objectives, TransCanada employed Inspectors like Plaintiff and the Class Members to work on and oversee the transportation of oil and gas through Defendant's interstate network of pipelines.

25.     At all material times, Defendants were joint employers within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.  Defendants directly or indirectly acted in the interest of an employer toward the Plaintiff and the Class Members at all material times, including, without limitation, directly or indirectly controlling all employment terms and conditions of Plaintiff.

26.     TransCanada is a company that owns and operates pipelines in interstate commerce.

27.     TransCanada's entire industry is related to the exploration, production, and transportation of oil and gas goods.

28.     TransCanada and/or it's clients build, repair, and/or maintain pipelines that enable the movement of goods, specifically oil and gas, across state lines as a stream of interstate commerce.

29.     Through Plaintiff's job duties of inspecting elements of the pipeline infrastructure, Plaintiff was responsible for the safe transportation of oil and gas across the country.

30.     The United States Department of Transportation regulates pipeline and safety maintenance, including through the Pipeline and Hazardous Materials Safety Administration

31.     The Pipeline and Hazardous Materials Safety Administration sets federal standards that pipelines must comply with in their operation.

---

[2] *See* https://www.tcenergy.com/about/explore-energy/creating-our-energy-future/two-reasons-we-need-pipelines/ (last visited 08/22/22)

32.      Plaintiff's duties included ensuring pipelines were constructed and/or repaired in accordance with established standards, procedures, plans, and regulations.

33.      Plaintiff assisted Defendants in meeting all operation requirements set forth by the Pipeline and Hazardous Materials Safety Administration on a federal level and by related state agencies.

34.      If Plaintiff or the Class Members did not perform their job correctly, the pipelines could rupture or explode, causing serious personal, environmental, and financial harm.

35.      The inspection services Plaintiff provided to Defendants and its clients were necessary to keep the intra- and interstate flow of oil and gas.

36.      Plaintiff's work was centered on ensuring the safe transport of oil and gas to its ultimate destination.

37.      Defendants and its clients rely on Plaintiff to inspect pipelines and ensure the safe transportation of goods in interstate commerce.

38.      Specifically, Defendants rely on Plaintiff and other inspectors who "visually inspect every phase of the installation process including lowering the pipe into the ditch, and then backfilling."[3]

39.      After installation, Defendants relies on Plaintiff and other inspectors to ensure "**all pipelines and facilities are monitored constantly**" and address "pipeline anomalies **through inspections and repairs**."[4]

40.      Without the work of pipeline inspectors like Plaintiff, Defendants' pipelines would not exist–let alone safely transport–oil and gas across the United States.

41.      At all relevant times, Plaintiff was actively and directly engaged in the transportation of oil and gas across state lines.

---

[3] *See* https://www.tcenergy.com/sustainability/safety/pipeline-and-operations/ (last visited 08/22/22).
[4] *Id.*

42.     Plaintiff performed work that directly progressed the movement of goods, specifically oil and gas, across state lines.

43.     Plaintiff performed work directly affecting the channels of commerce.

44.     Plaintiff employed directly in the channels of commerce.

45.     At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce.

46.     Defendants treated Plaintiff and the Class Members as employees and uniformly dictated the pay practices to which Plaintiff and the Class Members were subjected.

47.     Any potential classification by Defendants of Plaintiff or the Class Members as independent contractors does not alter its status as an employer under the FLSA.

## JOINT EMPLOYMENT

48.     Plaintiff incorporates all previous paragraphs and alleges that Defendants were joint employers for the purposes of the FLSA. *See* 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.

49.     At all material times, Defendants were joint employers within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.  Defendants directly or indirectly acted in the interest of an employer toward the Plaintiff and the Class Members at all material times, including, without limitation, directly or indirectly controlling all employment terms and conditions of Plaintiff.

50.     As joint employers, Defendants are jointly and severally liable to Plaintiff for the violations and causes of action alleged herein.

## CAUSES OF ACTION - FLSA VIOLATIONS

51.     Plaintiff worked for Defendants under their day rate pay scheme.

52.     Plaintiff received a day rate for each day he worked for Defendants.

53.     Plaintiff received the day rate regardless of the number of hours he worked in a week, even when he worked more than 40 hours.

54.     If Plaintiff did not work, he did not get paid.

55.     Plaintiff did not receive overtime pay.

56.     Plaintiff never received guaranteed weekly compensation from Defendants irrespective of the day worked (i.e., the only compensation he received is the day rate he was assigned for all hours worked in a single day or week).

57.     This is despite the fact Plaintiff often worked 12 or more hours a day, for 6 to 7 days a week, for weeks at a time.

58.     Plaintiff did not receive a salary.

59.     Plaintiff was not employed on a salary basis.

60.     Defendants knew Plaintiff worked more than 40 hours in a week.

61.     Defendants knew, or showed reckless disregard for, whether Plaintiff was entitled to overtime under the FLSA.

62.     Thus, Defendants willfully violated the FLSA by failing to pay Plaintiff overtime.

63.     By failing to pay Plaintiff overtime at one-and-one-half times their regular rate, Defendants violated the FLSA.

64.     Defendants' compensation scheme of paying Plaintiff a day rate with no overtime compensation for weeks in which they worked over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

65.     Defendants owe Plaintiff the difference between the rate actually paid (day rate) and the proper overtime rate for all overtime hours worked.

66.     Because Defendants knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Defendants owe these wages for at least the past three years.

67.     Defendants did not comply with the FLSA in good faith.

68.     Defendants did not have a subjective believe that it was complying with the FLSA.

69.     Defendants did not have objective reasons to believe it was complying with the FLSA in good faith.

70.     Defendants never investigated their pay practices.

71.     Defendants were aware of other FLSA lawsuits involving a day rate.

72.     Defendants have not made changes to its pay practice over the past 5 years.

73.     Defendants are liable to Plaintiff for an amount equal to all unpaid overtime wages as liquidated damages.

74.     As joint employers, Defendants are jointly and severally liable to Plaintiff for the violations alleged herein

75.     Plaintiff is entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiff incorporates all previous paragraphs and alleges that Defendants' illegal pay practices imposed on them were likewise imposed on the Class Members.

77.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

78.     Numerous other individuals who worked with Plaintiff were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by federal wage laws.

79.     Based on his experiences and tenure with Defendants, Plaintiff is aware that Defendants' illegal practices were imposed on the Class Members.

80.     Defendants used the Class Members across the United States.

81.     Plaintiff and the Class Members were all improperly denied overtime compensation when they worked in excess of forty 40 hours per week.

82.     Defendants are the true employer of Plaintiff and the Class Members.

83.     Defendants' failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Class Members.

84.     Plaintiff's experiences are therefore typical of the experiences of the Class Members.

85.     The specific job titles or precise job locations of the various Class Members do not prevent collective treatment.

86.     Plaintiff has no interests contrary to, or in conflict with, the Class Members. Like each member, Plaintiff has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

87.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88.     Absent this action, many Class Members likely will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA.

89.     Furthermore, even if some of the members of the class pursued individual litigation against Defendants, it would be unduly burdensome to the judicial system.

90.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Class Members and provide for judicial consistency.

91.     The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.     Whether Defendants employed Plaintiff and the Putative Class Members within the meaning of the FLSA;

      b.     Whether Defendants' decision to not pay time and a half for overtime to Plaintiff and the Class Members was made in good faith;

c.     Whether Defendants' violations of the FLSA were willful; and

d.     Whether Defendants' illegal pay practices were applied uniformly across the nation to all Class Members.

92.     Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

93.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

94.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

95.     Plaintiff demands a trial by jury.

## PRAYER

96.     WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a.     For an order allowing this action to proceed as a FLSA collective action and directing notice to the Class Members;

b.     For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff and the Class Members for liquidated damages equal in amount to their unpaid compensation;

c.     For an Order awarding Plaintiff and the Class Members their costs of this action;

d.     For an Order awarding Plaintiff and the Class Members their reasonable attorneys' fees and expenses as provided by the FLSA;

e.     For an Order awarding pre- and post-judgment interest; and

f.     For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**