United States District Court
Southern District of Texas
**ENTERED**
January 25, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TODD SAIN, Individually and for Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-2921 |
| TRANSCANADA USA SERVICES, INC., and ONSHORE QUALITY CONTROL SPECIALISTS, LLC, | § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Todd Sain filed a Fair Labor Standards Act case for himself and others similarly situated. (Docket Entry No. 1). One defendant, TransCanada USA Services, Inc., filed an answer, and both TransCanada and the other defendant, Onshore Quality Control Specialists, LLC, moved to compel arbitration on the basis of an arbitration agreement between Onshore and Sain. (Docket Entries Nos. 8, 12). Onshore also moved to dismiss on the basis of its arbitration agreement with Sain. (Docket Entry No. 11). Sain opposes both motions, and the defendants have replied. (Docket Entry Nos. 15, 16, 21, 22). The court grants the motion to compel arbitration and denies the motion to dismiss as moot. The reasons are set out below.

**I.     The Arbitration Agreement**

The Arbitration Agreement provides:

The Company and the Employee consent to the resolution by arbitration of all claims arising out of the Employee's application with, employment by, or termination from the Company regardless of whether those claims arise under common law or under statutory law. . . .

To illustrate, the claims covered by this Agreement include—but are not limited to—claims for wages, overtime wages, or other compensation . . . .

(Docket Entry No. 11-2 § 2).  The "Governing Law" section states that "Employee acknowledges that the Company is engaged in interstate commerce . . . [, and the parties] agree that the Federal Arbitration Act applies to this Agreement."  (*Id.* § 3).  The Agreement also provides that: "arbitrations covered by this Agreement shall be adjudicated in accordance with the laws of the state of Texas"; any arbitration conducted under the Agreement "shall be conducted in accordance with the procedures set forth in the AAA Employment Arbitration Rules and Mediation Procedures"; and that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (*Id.* §§ 3, 5, 8).

The Agreement bears the signatures of Eddie Hooks, on behalf of Onshore, and Todd Sain. (*Id.* at 4).

## II.    The Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*., permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement.  *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24 (1991)); 9 U.S.C. §§ 3, 4.  A court must decide "whether the parties agreed to arbitrate the dispute in question," which requires deciding whether: "(1) there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Tittle v. Enron Corp*., 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc*., 89 F.3d 252, 258 (5th Cir. 1996)).

To determine whether a dispute is arbitrable under the FAA, the court must determine: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute . . . falls within the scope of that arbitration agreement.  *Gross v. GGNSC Southaven, LLC*, 817 F.3d

169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418–19 (5th Cir. 2006)); *Gezu v. Charter Commc'ns*, 17 F.4th 547 (5th Cir. 2021).

Federal policy strongly favors enforcing contractual arbitration agreements if the contracts exist under state law and the disputes are within the scope of the arbitration clause. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1983); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788 (2022). This FAA provision exempts "only contracts of employment of transportation workers [those workers exempt under § 1]." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Applying this exemption requires two findings: (1) the arbitration clause is part of an employment contract; and (2) the employee challenging the arbitration clause is a transportation worker. *See id*.

Under the Texas General Arbitration Act (TAA), TEX. CIV. PRAC. & REM. CODE § 171.001 *et seq.*, "[a] written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that . . . arises between the parties after the date of the agreement . . . ." *Id.* § 171.001(a) & (a)(2). The TAA does not contain an exemption for workers engaged in foreign or interstate commerce.

III.   **Analysis**

Sain argues that the Agreement he signed with Onshore is not a basis to compel sending him and the other pipeline inspectors to arbitrate. Sain first contends that pipeline inspectors are workers in interstate commerce and cannot be compelled to arbitrate their claims under the FAA because the statute exempts such workers. Next, Sain argues that a federal court exercising federal question jurisdiction cannot send the claims to arbitration under the TAA, because state arbitration laws apply only when a court exercises diversity jurisdiction. Finally, Sain argues that, even if he

may be compelled to arbitrate with Onshore, he cannot be compelled to arbitrate with TransCanada because TransCanada is not a party to the Agreement.

### A.   Sain Is Not Exempt under § 1 of the FAA

Although the parties have delegated the issue of arbitrability to the arbitrator, (Docket Entry No. 11-2 § 8), it is for the court to decide whether the § 1 exemption of the FAA applies. *New Prime v. Oliveira*, 139 S. Ct. 532, 537 (2019) ("[A] court [rather than an arbitrator] should decide for itself whether § 1's . . . exclusion applies before ordering arbitration.").

The FAA provides:

> "Maritime transactions," as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce," as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1.

Sain contends that the Agreement cannot be enforced against him and the other pipeline inspectors he seeks to include in the collective action because they are "workers engaged in foreign or interstate commerce." *Id.* If the pipeline inspectors fall under the exemption, they cannot be compelled to arbitrate their disputes under the FAA. In response, the defendants argue that the connection between pipeline inspectors and interstate commerce is too attenuated for the inspectors to be exempt from the FAA.

Sain alleges that he and the other pipeline inspectors are responsible for ensuring that pipeline construction and repairs comply with federal and state laws and regulations. (Docket Entry No. 1 ¶¶ 32–33). The pipelines that he and other inspectors inspect carry oil and gas across

4

state lines.  (*Id.* ¶ 28).  The defendants do not object to this description of Sain's duties or contend that the pipelines are not in foreign or interstate commerce.  Rather, they argue that pipeline-inspector work is not "the direct engagement with interstate commerce that the FAA requires" to trigger the exemption.  (Docket Entry No. 12 at 10).

The Supreme Court most recently addressed the scope of the § 1 exemption in *Saxon*, a case involving workers who loaded cargo bound for interstate transport onto commercial aircraft. To fall under the § 1 exemption, a plaintiff "must at least play a direct and 'necessary role in the free flow of goods' across borders." *Saxon*, 142 S. Ct. at 1790.  An exempt worker "must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Saxon*, 142 S. Ct. at 1790 (quoting *Adams*, 532 U.S. at 121).  Under that standard, the Court held that "one who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (e.g., transportation) of that cargo" and therefore exempt from the FAA.  *Id.*

The cases cited by the defendants do not deal with oil pipeline inspectors.  The Fifth Circuit's holding that drivers who "pick[] up items from a local warehouse and deliver[] those items to local customers" are not "engaged in interstate commerce" under the FAA involved workers who plainly did not work "direct[ly]" in interstate commerce.  *Lopez v. Cintas Corp.*, 47 F.4th 428, 432 (5th Cir. 2022).  The *Lopez* court had no occasion to address workers like Sain, whose work relates to the interstate infrastructure used to transport goods, rather than to the actual handling of goods.  And Sain's responsibilities as a pipeline inspector involves instrumentalities of interstate commerce, unlike the duties of janitors who happen to work for corporations involved in interstate commerce, *United States v. Am. Building Maintenance Indus.*, 422 U.S. 271, 285 (1975), or workers who sell materials that may be used in interstate commerce.  *Gulf Oil Corp. v.*

5

*Corp. Paving Co.*, 419 U.S. 186, 198 (1974).  The FAA's exemption covers workers "engaged in foreign or interstate commerce," 9 U.S.C. § 1, not only workers who themselves "move" goods across borders.  (Docket Entry No. 12 at 10).

A court in this district recently addressed the § 1 exemption's applicability to pipeline inspectors.  There, the court observed that the plaintiff-inspector "ensures flow," but "does not . . . ha[ve] any control or interfacing with the oil and gas or its flow."  *Whitaker v. Enbridge (U.S.), Inc.*, No. H-22-2354, 2022 WL 17405833, at *3 (S.D. Tex. Dec. 2, 2022).  Acknowledging the general importance of inspection work, the court stated that pipeline inspectors' "'role in the free flow of [oil and gas] across borders' is not direct."  *Id.* (quoting *Saxon*, 142 S. Ct., at 1790).  The *Whitaker* court also noted that other district courts have held that workers involved in the maintenance, rather than the direct operation, of instrumentalities of interstate commerce are not exempt under § 1.  *See Holley-Gallegly v. TA Operating LLC*, No. EDCV 22-593 JGB (SHKx), 2022 WL 9959778, at *3 (C.D. Cal. Sept. 16, 2022) (mechanics who serviced trucks, operated almost exclusively in interstate commerce, are not exempt under § 1); *Whitman v. DCP Midstream, LLC*, No. 22-cv-106, 2022 WL 1836733 (N.D. Okla. June 3, 2022) (pipeline inspectors not exempt).  Mindful of the Supreme Court's direction that the § 1 exemption "be afforded a narrow construction," *Circuit City*, 532 U.S. at 118, the court finds these cases persuasive.

In short, while Sain inspects the physical infrastructure needed for the interstate transportation of oil and gas, he does not handle, control, direct, or otherwise directly engage with the flow of those products and therefore is not an exempt transportation worker.

The court grants the motion to compel arbitration.

## B.     The Arbitration Agreement May Be Enforced under State Law

The defendants argue that even if the FAA does not apply and cannot be used to compel arbitration, the Texas Arbitration Act is an alternate ground to compel arbitration.  (Docket Entry

No. 12 at 11).  The defendants point to the choice-of-law provision of the Agreement.  (*Id.*).  Sain argues that this choice-of-law provision applies only when a claim is subject to arbitration—which, under the FAA, Sain's claim is not.  (Docket Entry No. 15 at 15).  Sain argues that the provision acts only to direct the arbitrator to the relevant substantive law.  The parties, Sain argues, chose the FAA as only basis to interpret and enforce the Agreement.  (*Id.*).  Sain additionally argues that a court exercising its federal question jurisdiction cannot rely on state law to compel arbitration.  (*Id.* at 16).  The upshot of Sain's understanding of the arbitration agreement and federal jurisdiction is that the court must deny both motions.

The defendants argue that the Agreement may be enforced under state law because the parties have chosen state law to govern the Agreement.  They point to *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc*., 141 F.3d 243, 247 (5th Cir. 1998).  In *Ford*, the arbitration clause stated: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by arbitration in accordance with the Texas General Arbitration Act . . . ." *Id.* at 246.  The clause in *Ford* did not explicitly state that the contract was governed by Texas law, only that those controversies arising out of the contract were to be settled "in accordance with" the Texas arbitration law.  The same is true here.  The Agreement the parties signed states that they "agree that the Federal Arbitration Act applies to this Agreement," (Docket Entry No. 11-2 § 3), and that "arbitrations covered by this Agreement shall be adjudicated in accordance with the laws of the state of Texas."  (*Id.*).

The Agreement between Sain and Onshore does not explicitly refer to the Texas Arbitration Act.  But even if that difference meant that the reasoning of *Ford* did not apply to this case, state law is a permissible basis for enforcing the Agreement.  Sain relies on a reading of older authorities

that he argues preclude Texas law as a basis for compelling arbitration.  These authorities do not support his argument that arbitration cannot be ordered based on state law.

The cases Sain cites do not speak to the question presented by his lawsuit.  For example, *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198 (1956), presented the question "whether, apart from the Federal [Arbitration] Act, a provision of a contract providing for arbitration is enforceable in a diversity case." *Id.* at 202.  The *Bernhardt* Court had no occasion to consider the applicability of state arbitration law in the federal-question context.  After *Bernhardt*, the First Circuit concluded that "the ruling in the *Bernhardt* case has no bearing on a suit under § 301 [of the Taft-Hartley Act] . . . [because] jurisdiction in a § 301 case is not based upon diversity of citizenship." *Local 205, United Elec., Radio & Mach. Workers of Am. (UE) v. Gen. Elec. Co.*, 233 F.2d 85, 95 (1st Cir. 1956).  The Supreme Court affirmed on the alternative basis that the Taft-Hartley Act itself provided a "body of federal substantive law for the enforcement of collective bargaining agreements." 353 U.S. 547 (1957).[1]  The Court's brief discussion did not analyze whether state law might also apply to interpret the arbitration agreement.  *Local 205* establishes that other federal law might apply to some arbitration provisions—not that state law does not apply.

In a recent case, a court of appeals declined to analyze a contract under state arbitration law after concluding that the FAA did not apply.  In *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021), the Ninth Circuit held that the § 1 exemption applied.  The court declined to analyze the contract under state law because the parties' agreement provided that:

---

[1]  The other case Sain cites, *Local 19, Warehouse, Processing & Distributive Workers Union v. Buckeye Cotton Co.*, 236 F.2d 776 (6th Cir. 1956), also concerned § 301 of the Taft-Hartley Act.

> These Terms are governed by the law of the state of Washington without regard to its conflict of laws principles, except for [the arbitration clause] of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law.

*Id.* at 920.  The court interpreted this provision as expressly excluding Washington law from being applied to the arbitration clause, and additionally concluded that it could not sever the clause without rewriting the contract.  *Id.*   The court reached that result by looking to Washington law on the interpretation of contract language.  *Id.*  The analysis in *Rittmann* assumed that Washington law applied to the contract, barring its contractual exclusion by the parties.

The Agreement here does not similarly exclude Texas law as a means of interpreting the arbitration clause.  Instead, the Agreement provides that Sain "acknowledges that the Company is engaged in interstate commerce . . .  [and the parties] agree that the Federal Arbitration Act applies to this Agreement."  (Docket Entry 11-2 § 3).  This language does not exclude the application of other law to the Agreement.  It merely signals the parties' understanding that the Agreement could be enforced according to the federal statute.

Ample authority suggests that a district court may turn to state law to interpret an arbitration agreement even when the court is not sitting in diversity.  Courts regularly apply state-law principles in FAA cases.  For example, § 10 provides grounds to set aside an award because the arbitrator exceeded the powers delegated to her by the arbitration agreement, 9 U.S.C. § 10, such as when the arbitrator resolves a nonarbitrable dispute.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, (1995).  The arbitration agreement defines what disputes are arbitrable.  *See, e.g.*, *Papalote Creek II, LLC v. Lower Colo. River Auth.*, 918 F.3d 450, 455 (5th Cir. 2019) ("If the arbitration clause limits arbitration to performance-related disputes, then the arbitrator cannot decide other matters, such as interpretative disputes.").  Section 10 contains no substantive law for the interpretation of arbitration agreements and does not explicitly direct federal courts to look to state law to interpret the scope.  A federal court evaluating whether an award arose out of an

9

arbitrable or nonarbitrable dispute must interpret the arbitration clause or agreement to determine the scope of the disputes it covers.  To perform this interpretative work, courts look to "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.  Courts also look to state contract law when determining who is bound by an arbitration agreement.  *See, e.g.*, *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 401 (5th Cir. 2022) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) ("Neither [§ 2 or § 3 of the FAA] purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them.")); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) ("Under the Federal Arbitration Act, background principles of state contract law, when relevant allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (quoting reference omitted)).

Ordinary state-law principles also apply when a district court exercises its federal question jurisdiction.  For example, some federal arbirtration jurisprudence involves treaty obligations created by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (entered into force with respect to the United States Dec. 29, 1970) (the "New York Convention").  Legislation implementing that treaty, codified within Chapter 2 of the FAA, expressly grants subject-matter jurisdiction.  9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").  New York Convention cases are

federal question cases, unlike domestic FAA cases, for which a district court must find an independent basis to exercise jurisdiction.[2]

For example, *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 291 (3d Cir. 2003), concerned a dispute between the People's Republic of China plaintiff and the New Jersey defendant. The parties arbitrated their dispute in the face of the defendant's objections that the contracts calling for the arbitration of disputes were forged. The arbitration resulted in an award for Minmetals, which it sought to confirm and enforce under 9 U.S.C. § 203. Minmetals asserted that the defendant had waived its forgery argument, which related to the arbitrators' jurisdiction, by participating in the arbitration proceedings. *Id.* at 290. To determine whether Chi Mei had waived objections to the arbitrators' jurisdiction and, consequently, to enforcement of the award, the court applied ordinary conflict-of-laws principles and then followed New Jersey law. *Id.* at 291 ("In this case it appears that if state law is applicable it is that of New Jersey, the state in which Chi Mei is incorporated, has its offices, and does business.").

When, as here, an arbitration agreement does not reject application of state law, a district court hearing a federal question may look to state law when determining whether to grant a motion to compel arbitration. The Texas Arbitration Act applies to disputes that "arise[] between the parties after the agreement." TEX. CIV. PRAC. & REM. CODE § 171.001. There is no foreign or interstate commerce exemption in the TAA. *See id.* § 171.002 (list of exemptions). A federal court may compel arbitration under the TAA. *ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 310 (5th Cir. 1999).

---

[2] A district court must find an independent subject-matter basis to exercise jurisdiction over a domestic FAA case. Jurisdiction for actions to compel arbitration under § 4 is determined by "looking through" to the actual substance of the controversy. *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). Federal jurisdiction under §§ 9 and 10 to confirm or vacate an award turns on the face of the application to vacate or confirm. *Badgerow v. Walters*, 142 S. Ct. 1310, 1321 (2022).

Sain does not argue that the Agreement is invalid. "Generally, after finding an agreement valid, a court considers the agreement's terms to determine which issues are arbitrable." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *see also Halliburton Energy Services, Inc. v. Ironshore Specialty Ins. Co*., 921 F.3d 522, 530 (5th Cir. 2019) (citing *Certain Underwriters at Lloyd's of London v. Celebrity, Inc*., 950 S.W.2d 375, 377 (Tex. App.—Tyler 1996, writ dism'd w.o.j)). But a court will not determine arbitrability when the parties have contracted to delegate that decision to the arbitrator. *McAllen*, 268 S.W.3d at 61. Instead, the court will compel arbitration and allow the arbitrator to decide whether the arbitration agreement encompasses a particular dispute. *Id.*

The Agreement incorporates the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures. (Docket Entry No. 11-2 § 5). The incorporation of these rules delegates questions of arbitrability, "whether [the parties'] arbitration agreement applies to the particular dispute," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019), to the arbitrator, because those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AM. ARB. ASS'N, EMPLOYMENT ARBITRATION RULES & MEDIATION PROCEDURES § 6(a) (2017)[3]; *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co*., 687 F.3d 671, 675 (5th Cir. 2012); *Ownley v. Brunel Energy, Inc*., No. 4:20-cv-03115, 2020 WL 7342677, at *2 (S.D. Tex. Dec. 14, 2020).

---

[3] *See* https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf (last viewed Dec. 27, 2022).

###### C.        Whether TransCanada May Compel Arbitration

TransCanada joins Onshore's motion to compel arbitration, arguing that Sain must arbitrate his claims against TransCanada despite the absence of a written arbitration agreement with TransCanada.  Whether a nonsignatory to an arbitration agreement may invoke that agreement is a question for the court, even when the parties' agreement provides that an arbitrator will determine arbitrability.  *Newman*, 23 F.4th at 399.

The defendants argue that Sain must arbitrate with TransCanada because of the related doctrines of intertwined-claims estoppel and equitable estoppel.  "[I]ntertwined-claims estoppel applies when: (1) a nonsignatory has a 'close relationship' with one of the signatories, and (2) the claims are intimately founded in and intertwined with the underlying contract obligations." (internal quotation marks removed)).  *Id.* at 404.  "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."  *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (emphasis removed) (quoting and adopting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)). Sain argues that TransCanada cannot compel arbitration under any estoppel theory because Sain, as an exempt transportation worker, cannot be compelled to arbitrate with either defendant.  (Docket Entry No. 15 at 20–21).

Sain's allegations treat the defendants as an indistinguishable unit, demonstrating the "tight relatedness of the parties, contracts, and controversies."  *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 613 (5th Cir. 2016) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)).  The court has found that Sain may be compelled to arbitrate with Onshore.  TransCanada too may compel Sain to arbitrate under the intertwined-claims and equitable estoppel doctrines.

13

**IV.     Conclusion**

The motion to compel arbitration, (Docket Entry No. 12), is granted.  This case is stayed and administratively closed pending the resolution of the arbitration.

The motion to dismiss, (Docket Entry No. 11), is denied as moot.

SIGNED on January 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

14